### EDWIN PRICHARD v. JAMES L. SHARP.

*Duress.*

A person arrested on capias could not get bail, and, on giving the plaintiff secured notes, the latter consented to his discharge. The arrest was caused in good faith for an injury which plaintiff supposed had been done by defendant, and the notes were taken in satisfaction of the injury, though they did not fully compensate it. *Held*, that a bill would not lie for the cancellation of the securities on the ground that they had been obtained by duress.

Courts cannot disturb a compromise between parties, unless on satisfactory evidence of mistake, fraud or unconscionable advantage.

Appeal from Missaukee. (Fallass, J.) June 22.—Oct. 10.

BILL to set aside mortgage. Complainant appeals. Affirmed.

*Sawyer & Bishop* for complainant. Contracts made while under imprisonment are closely watched: 1 Story's Eq. Jur. § 239; *Foshay v. Ferguson* 5 Hill 158; *Collins v. Westbury* 2 Bay 211; duress depends as well on the state of mind as on other facts: *Hatter v. Greenlee* 26 Am. Dec. 374; Broom's Legal Maxims 277; 1 Selw. N. P. 83; even

if the imprisonment is lawful, a contract influenced by it can be set aside for duress: *Watkins v. Baird* 6 Mass. 511; for Michigan cases see *Feller v. Green* 26 Mich. 70; *Pierce v. Pierce* 38 Mich. 417; *Vyne v. Glenn* 41 Mich. 112; *Bank v. Watkins* 21 Mich. 483; *Gebhart v. East Saginaw* 40 Mich. 336.

*Fallass & McIntyre* for appellee. Duress requires undue or illegal force, or the infliction of unnecessary and unlawful privation to escape which one is induced to execute the instrument: *Rood v. Winslow* 2 Doug. (Mich.) 68.

GRAVES, C. J. The defendant hired complainant to plow a small piece of ground on his premises, and distant a few rods from his house and barn. There were two or three log heaps in the field. The defendant left home in the forenoon of Tuesday, being the 18th of August, 1879, and continued absent until the 26th. Shortly after he left, and on the same day, the complainant repaired to defendant's place to perform the plowing. He set fire to one of the log heaps, and plowed a few furrows, and then quit and went away. When the defendant returned he found that his barn, together with the contents, had been destroyed by fire during his absence, and there were signs that the fire had passed to the barn from the log heap. He adopted the opinion that the firing of the log heap was the cause of the loss, and that the act was culpable negligence for which the complainant was responsible. The complainant claimed that the barn did not burn during his stay at the premises, and that he knew nothing of it; and further, that the fire which destroyed the barn did not proceed from the log heap.

The defendant sued him for the damage by capias, and obtained an order for bail in the sum of $1000. The writ was made returnable April 13, 1880, and complainant was arrested on it about March 5th, and, failing to give bail, was committed. The term of court next after the return-day was not to occur until October, and complainant, not succeeding in finding bail, was anxious to secure his enlarge-

ment in some other way, and avoid being confined until fall. He remained in custody until the return-day, and then entered into an agreement with the defendant to give him his notes, secured by mortgage, for $325.

The complainant claims that the giving of the securities was simply to obtain his enlargement, and for no other purpose, but the defendant swears, and he is corroborated, that the transaction was a settlement and compromise of the action and a release of complainant from all further liability. The parties communicated their understanding to the sheriff, and the defendant observed that he might let the complainant go out to enable him to execute the papers, and the sheriff complied, and all three went together to a Mr. Lewis, who prepared the writings, and complainant at once executed and delivered them.

The parties then separated. It appears that immediately before the making of this arrangement the complainant was in consultation with counsel, and that defendant waited to let it be concluded. This fact shows that complainant had legal advice, and it also bears on his motive in entering into the arrangement. In the course of a very few days he filed this bill to have these securities just given, and which amounted to much less than the loss, entirely set aside and canceled, on the ground that they were obtained by duress. The defendant answered, and the cause was heard upon evidence taken in open court, and decided adversely to complainant.

On a careful examination of the record we are not able to reach a different conclusion. The case is addressed to the protective equity which anticipates attempts to enforce unconscionable transactions, and applies a preventive remedy, and the claim for relief is based on the assumption that by his legal proceedings the defendant first got complainant under his power, and then obtained these papers by an oppressive and iniquitous use of it. There is no difficulty about the principle, but the trouble is that the facts do not support it. The record contains nothing tending to impeach the genuineness of the action at law, nothing to sug-

gest that the proceedings were not steps in due course of law, and no pretense even that there was any irregularity. Whatever hardship to complainant may have been involved, either because he was unwilling or unable to procure bail, could not be considered as a wrong or injury by defendant; and whether in truth the complainant was or was not guilty is beside the question. That the case was real, and not simulated; that the defendant prosecuted bona fide, and on ground which appeared to him reasonable,—cannot be denied. *Gates v. Shutts*, 7 Mich. 127.

It is no doubt true that, reasoning by the rules of predestination, the end was already what it only remained for the subsequent trial to evolve. But there was a true controversy, and the result of it, however certain in the latter sense, no one could predict, and in this state of uncertainty it was entirely competent for the parties to settle the dispute themselves, instead of trying it in court; and no tribunal would have a right to disturb their compromise, unless on satisfactory evidence of mistake, fraud or unconscionable advantage, and the complainant fails to establish either.

The decree should be affirmed with costs.

The other Justices concurred.