SIEGEL v SPINNEY

Docket No. 78001. Submitted December 7, 1984, at Grand Rapids.— Decided March 5, 1985.

> A 25-foot by 15-foot strip of land in its natural state lay between property owned by Latimer W. Spinney and Joan V. Spinney and property purchased by Ann V. Siegel in 1966. The Spinneys subsequently extended their lawn into the strip of land, clearing and using a portion of it. Siegel filed suit against the Spinneys in Emmet Circuit Court claiming title to the property and alleging trespass on the part of the Spinneys. On the day set for trial, an outline for a consent judgment agreed to by the parties was read into the record. Several attempts at drafting an acceptable consent judgment failed to produce a consent judgment to which both parties would agree. The trial court, Martin B. Breighner, J., nevertheless, over plaintiff's objection and pursuant to defendants' motion for summary judgment, adopted a consent judgment drafted by defendants' attorney and judgment was entered. Plaintiff appealed. *Held:*
>
> The consent judgment entered by the court is in accord with the agreement entered on the record and there has been no evidence of mistake, fraud, or unconscionable advantage. Plaintiff's claim of lack of meeting of the minds is without merit and the consent judgment will not be disturbed.
>
> Affirmed.

1. JUDGMENTS — COMPROMISE AND SETTLEMENT — CONSENT JUDGMENTS — RELIEF FROM JUDGMENT — APPEAL.

> Agreements or consents entered into between parties in open court will not be disturbed absent satisfactory evidence of mistake, fraud or unconscionable advantage.

2. CONTRACTS — MEETING OF MINDS — OBJECTIVE STANDARD.

> There must be a meeting of the minds on all of the material facts

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Judgments § 1097.

Modern views of state courts as to whether consent judgment is entitled to res judicata or collateral estoppel effect. 91 ALR3d 1170.

[2] 17 Am Jur 2d, Contracts §§ 19, 21.

in order to form a valid contract; a meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts.

*Stroup, Brown, Mulhauser & Johnson, P.C.* (by *Frederick R. Mulhauser)*, for plaintiff.

*Dennis G. Cross,* for defendants.

Before: R. M. MAHER, P.J., and ALLEN and R. E. ROBINSON,* JJ.

PER CURIAM. Plaintiff appeals as of right from a consent judgment establishing a boundary between the properties of plaintiff and defendants and giving defendants a limited right to trim trees on the strip of land of plaintiff, ownership of which was formally in dispute.

At issue was a 25' x 15' strip of land lying between defendants' land on the north and plaintiff's on the south. When plaintiff purchased the property in 1966, the strip was a natural area with trees, bushes, and underbrush, serving as a separation between the properties. Defendants subsequently extended their lawn south into a portion of the natural area and built a guest house just north of the area in 1981. They also began piling wood, parking boats, and chopping mature trees in the remaining natural area.

Plaintiff sued, claiming title to the disputed area and alleging trespass on the part of defendants.

On the date set for trial, the trial judge urged the parties to enter into a consent judgment. Following a short recess, counsel for defendants announced that an agreement had been reached and that defendants were prepared to enter the parameters of a consent judgment between the parties on

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

the record. Counsel for plaintiff then outlined an agreement on the record:

"[T]he parties * * * are in agreement that a new northern boundary to plaintiff's property will be established along a line to be surveyed by Mr. Young of Bidstrup and Young, to conform to the existing use of this disputed area by the parties * * *; that the plaintiffs will in the future retain rights to their privacy that this wooded area provides, and that the defendant will have the future right to view a second-story view from his guest house, and that if the defendant wishes to trim the mature trees in this area to effect his second-story view he will first seek the direction of the court who will retain jurisdiction of this matter for the purpose of controlling those trimming rights; and that the court will then permit him trimming rights with an eye towards his right to a second-story view and the plaintiff's right to privacy."

Defense counsel agreed that the summary by plaintiff's counsel was essentially the defendants' understanding of the settlement as well. Plaintiff herself also stated her approval on the record.

However, the parties' attorneys ran into difficulties drafting an acceptable consent judgment. Defendants objected to the draft proposed by plaintiff's counsel. Defense counsel then drafted three successive proposed consent judgments, none of which were acceptable to plaintiff. Nevertheless, the trial court adopted the last effort, with minor changes, pursuant to defendants' motion for summary judgment, GCR 1963, 117.2(3). Over plaintiff's objection that there was no meeting of the minds, the judgment was entered.

On appeal, plaintiff argues that the numerous proposed consent judgments drafted by the parties show that there was no meeting of the minds at the time the agreement was orally entered on the record. Plaintiff relies on *Norton Shores v Carr,* 59

Mich App 561; 229 NW2d 848 (1975), for her proposition that she is free to withdraw her consent prior to entry of the judgment, since consent must consist of approval both as to form and substance of the decree.

To the extent the *Norton Shores* case appears to have established a general right to revoke a consent judgment between the time it is orally placed on the record and when a judgment is actually signed, that decision has been the subject of criticism by this Court. See *e.g., Michigan National Bank of Detroit v Patmon,* 119 Mich App 772, 778; 327 NW2d 355 (1982), and *Meyer v Rosenbaum,* 71 Mich App 388, 391; 248 NW2d 558 (1976).

This Court in *Meyer v Rosenbaum, supra,* held that agreements or consents entered into between parties in open court will not be disturbed absent satisfactory evidence of mistake, fraud, or unconscionable advantage. The Court explained the rationale for forbidding litigants from disregarding settlement agreements knowingly entered into in open court:

"As a matter of public policy, it is extremely difficult to find any rationale for permitting a litigant to eschew a bargain knowingly made in open court, on the record of the court, and with the intent that the court and opposite party should rely thereon. The results of the *Norton Shores* doctrine would make the life of a trial judge extremely difficult. A great many, if not most, settlements are arrived at on the day of joust, when the jury is in attendance and the judge is waiting with instructions hopefully prepared. The attorneys then must be able to rely upon the knowledge that any stipulated agreement that they make will be final and binding on both parties. Otherwise, it will be extremely difficult to arrive at settlement, since the prepared litigant may not be willing to lose his day in court and be placed at the bottom of a ladder which may take him two years to climb.

"It is important that parties be able to settle cases fairly and finally on the record, and such settlements should not be upset because of any subjective hesitation or secret reservation on the part of either party." *Meyer v Rosenbaum, supra,* p 393.

Plaintiff attempts to distinguish *Meyer* on its facts, but we find its reasoning completely applicable to the instant case. As there has been no evidence of mistake, fraud, or unconscionable advantage, the consent judgment will not be disturbed.

Plaintiff objects that there was no meeting of the minds, as evidenced by the various proposed consent judgments. There must be a meeting of the minds on all the material facts in order to form a valid contract; a meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts. *Stark v Kent Products, Inc,* 62 Mich App 546, 548; 233 NW2d 643 (1975). The agreement recited on the record is not ambiguous; it makes clear that the competing interests are defendants' view and plaintiff's privacy. It also makes clear that defendants have the right to trim the mature trees within the entire disputed strip, with consideration to be given by the court to plaintiff's right to privacy. It was plaintiff's counsel who recited the agreement on the record. The only difference between the agreement on the record and the consent judgment entered by the court is that the consent judgment states that the view contemplated is that of Little Traverse Bay. It appears to us that the consent judgment entered by the court is in accord with the agreement entered on the record, and plaintiff's claim of lack of meeting of the minds is without merit.

Affirmed.